IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiffs, | **4:15CR3100** |
| vs. | |
| CARLOS ESCOBAR, AND SANTOS RAMIREZ-MORALES, | **FINDINGS RECOMMENDATION AND ORDER** |
| Defendants. | |

The defendants have moved to suppress the evidence seized and all post-arrest statements made on September 7, 2015. (Filing Nos. 49 & 51). Defendants claim the search of their vehicle violated the Fourth Amendment, and their post-arrest statements must be suppressed as fruit of this Fourth Amendment violation, and as obtained in violation of their Fifth Amendment rights.


FACTUAL FINDINGS


On September 7, 2015, the Grand Island Police Department ("GIPD") arrested an individual (hereinafter the "CI") on charges of possession of methamphetamine. At the time of his arrest, officers found over $9,000 on the CI's person. The CI was interviewed at the Grand Island Law Enforcement Center by Investigator Richard Conrad and Sergeant Jerry Atwell, both of whom are assigned to the Central Nebraska Drug and Safe Streets Task Force.

During his interview, the CI admitted he was involved in the distribution of methamphetamine and stated he was expecting to receive drugs from his two main suppliers that day. The CI identified the suppliers as "Jose" and "Carlos." The CI was willing to cooperate with the GIPD and complete these previously scheduled buys. GIPD

offered nothing in exchange for the CI's cooperation: The CI stated he wanted to be a "good citizen."

Using a speaker phone with officers listening, the CI contacted Jose first and arranged to meet him at a Goodwill parking lot.[1] As Conrad proceeded to the Goodwill parking lot to apprehend Jose, he was informed by Officer Belleci (who remained with the CI) that Jose switched the meeting location to the Walgreens located seven blocks from the Goodwill. Conrad went to the Walgreens location.

Once at Walgreens, Conrad observed Jose's vehicle, a blue-green Chevy pickup as previously described by the CI. And Conrad recognized Jose Gonzales-Legarda from previous criminal investigations. Conrad approached the vehicle and asked Gonzales-Legarda whether he had drugs in the vehicle. Gonzales-Legarda admitted he had drugs, and officers found methamphetamine in a bag on the front seat.

Conrad thereafter returned to the law enforcement center. The CI showed Belleci and Conrad text messages on his phone. He informed the officers that the messages were from his second supplier, Carlos, who had sold methamphetamine to the CI on several prior occasions. One text message read "mom is on her way and wants to meet you." The CI explained that "mom" was code for an individual named Frank, a person the CI met when Frank accompanied Carlos the night before. Frank was transporting drugs from Colorado, and the CI had planned to purchase methamphetamine from Frank when Frank arrived from Colorado on September 7, 2015. Frank was scheduled to arrive between 7:00 and 8:00 p.m.

---

[1] All conversations made between the CI and his two suppliers while he was in GIPD custody were made using a speaker phone. Officers Conrad and Belleci could hear the conversations in full.

The CI called Carlos to confirm the transaction. Carlos asked the CI to meet him at his apartment or a hotel to conduct the transaction. At the officers' direction, the CI stated those locations would not work. Carlos next wanted the CI to meet him at a Casey's store. Carlos instructed the CI to bring $8,000 as payment for one pound of methamphetamine. Carlos would then drive to the south Wal-Mart, pick up the methamphetamine from Frank and bring it back to the CI. But at the officers' direction, the CI proposed meeting both Carlos and Frank at the south Wal-Mart. Carlos agreed, stating he would be in a red pickup, Frank would park next to his pickup, and the CI should park on the opposite side of Carlos' pickup.

Officers attempted to gain a positive identification of Carlos and his vehicle before the meeting by surveilling the address Carlos had provided as his residence. Investigator Joshua Berlie located the red pickup. After researching its license plate, Berlie identified the truck as associated with Carlos Escobar, and he retrieved a photo of Escobar from the computer system. (Filing No. 76 at CM/ECF pp. 79–81). Berlie recognized Escobar and the truck from previous drug investigations.

Frank was running behind. Officers set up surveillance units at the Wal-Mart around 2:30 a.m. When the red truck arrived, Investigator Berlie, who was located in a parked vehicle nearby, recognized the vehicle and its driver, Carlos Escobar. (Filing No. 76 at CM/ECF pp. 82, 90). A short time later, a silver sedan with a driver and one passenger arrived at the Wal-Mart and parked on the passenger side of Escobar's red truck.

Escobar and the occupants of the silver sedan left their vehicles and entered the Wal-Mart. Sometime later, Escobar exited the store, went to his vehicle, and sat in the driver's seat. Morales, who had driven the sedan, came out next and stood by the driver's side of his vehicle. The passenger came out last carrying a Wal-Mart bag, and when he

arrived at the vehicle, he placed that bag in the sedan from the front passenger side. The officers then moved in and detained the three men. Sergeant Atwell opened the door of the sedan and retrieved a Wal-Mart bag from the front passenger seat. The bag contained a yellow shirt wrapped around a cellophane-wrapped brick of methamphetamine.

The suspects were arrested and were taken to the GIPD station to be booked and interviewed. Officers Pedersen and Visnaw, who speak Spanish, conducted the interviews.

Escobar was interviewed first. The officers asked Escobar biographical information including his name, address, and date and place of birth prior to informing him of his <u>Miranda</u> rights. After receiving his rights, Escobar indicated he wished to speak with an attorney and the interview ended.

Morales was then interviewed. The officers obtained Morales' biographical information. While arresting Morales, officers had obtained additional documents including an ID and some paystubs containing a social security number. Officer Visnaw presented these documents to Morales. He asked Morales if the ID was real or fake: Morales responded it was fake. He asked if the social security number on the paystub was his: Morales responded it was not. Morales was then advised of his <u>Miranda</u> rights. Morales agreed to answer the questions he considered appropriate.

## LEGAL ANALYSIS

1.    The Arrest and Search of the Car

Morales argues the search of the sedan violated his Fourth Amendment rights and was not supported by probable cause. Escobar joins this argument, stating that other than

his mere presence at the Wal-Mart, the officers possessed no information tying Escobar to the drug transaction at the time of arrest.

Warrantless searches and seizures must be based upon probable cause. Probable cause for a warrantless arrest exists when, at the moment of the arrest, law enforcement officers are aware of "facts and circumstances grounded in reasonably trustworthy information sufficient to warrant a belief by a prudent person that an offense has been or is being committed by the person to be arrested." United States v. Hartje, 251 F.3d 771, 775 (8th Cir. 2001), cert. denied, 151 L. Ed. 2d 889, 122 S. Ct. 925 (2001) (citing Beck v. State of Ohio, 379 U.S. 89, 91, 13 L. Ed. 2d 142, 85 S. Ct. 223 (1964)). "In establishing probable cause, law enforcement officials enjoy substantial latitude in interpreting and drawing inferences from factual circumstances." United States v. Horne, 4 F.3d 579, 589 (8th Cir. 1993). Evidence sufficient to justify a conviction is not required before making a warrantless arrest. United States v. Morales, 923 F.2d 621, 624 (8th Cir. 1991).

If probable cause exists, an officer can search a vehicle without a warrant. United States v. Brooks, 715 F.3d 1069 (8th Cir. 2013). Probable cause is found when there is a "fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). The determination of probable cause does not depend on isolated facts, but rather on the cumulative effect of the totality of the circumstances. United States v. Reiner Ramos, 818 F.2d 1392, 1394 (8th Cir. 1987). The approach used in determining probable cause is "practical, commonsense,' and 'non-technical.'" Id. (quoting United States v. Briley, 726 F.2d 1301, 1306 n.3 (8th Cir. 1984)).

In this case, the GIPD officers were not relying solely on the CI's statements. They were orchestrating and hearing the conversations themselves with the CI acting as a conduit. The officers spent the greater part of September 7, 2015 setting up controlled

drug transactions with the help of the CI. Earlier in the day, they had successfully apprehended Gonzalez-Legarda, the CI's first supplier, through an arranged transaction. Officers thereafter attempted to set up a controlled transaction involving the CI's second supplier, "Carlos."

After obtaining Carlos' address and a description of his vehicle, Investigator Berlie located and was able to identify the red pickup as belonging to Carlos Gonzalez. During his conversations with the CI, which the officers themselves heard, Carlos dictated how the transaction would occur: He stated he would park his red pickup in the Wal-Mart parking lot, the individual arriving from Colorado would park on one side of the red pickup, and the CI was instructed to park on the opposite side. GIPD had around 10 officers surveilling the area when the red pickup parked in the Wal-Mart parking lot in the early hours of September 8, 2015. The two vehicles parked as described by Carlos. Conrad testified that the Wal-Mart was not busy and there were not many other cars in the parking lot at that time. Additionally, Berlie, who was parked nearby, identified the pickup and its driver, Carlos Escobar.

While the defendants argue the CI's information was not reliable and cannot form the basis of probable cause, "when an informant's information is at least partly corroborated, . . .'attacks upon credibility and reliability are not crucial to the finding of probable cause.'" United States v. Gladney, 48 F.3d 309, 313 (8th Cir. 1995) (citation omitted). In this case, GIPD officers did not rely solely on the word of the CI, but on conversations they personally heard. The CI's information was also corroborated throughout the day by the apprehension of Gonzalez-Legarda, the identification of "Carlos" and his vehicle, and the fact that the sedan and red pickup arrived and parked as instructed in the Wal-Mart parking lot.

Although additional events occurred that were not anticipated or discussed in the planning, namely the three individuals entering the Wal-Mart store when they arrived at the parking lot, as Conrad explained, drug transactions can be fluid and changing. Based on a totality of the circumstances, the officers had heard and seen sufficient information to reasonably conclude that the three individuals in the Wal-Mart parking lot were carrying out the drug transaction described in the CI's previously monitored conversations with Escobar. And there was probable cause to believe that the Wal-Mart bag placed in the sedan contained the drugs to be sold. The officers had probable cause to arrest all three individuals and to search the sedan for drugs.[2]

2.      Statements Made by Defendants

Both Defendants seek to suppress statements made prior to receiving <u>Miranda</u> warnings. Escobar moves to suppress all biographical information he provided. And Morales seeks to suppress his answers to questions regarding the validity of his identification card and the social security number on his paystubs.

Requests for identifying information, including a person's name, address, and place and date of birth, are routine disclosures and are not typically subject to the protections of <u>Miranda</u>. <u>United States v. Jones, 266 F.3d 804, 812 (8th Cir. 2001)</u>. "[A] request for routine information necessary for basic identification purposes is not interrogation under <u>Miranda</u>, even if the information turns out to be incriminating. Only if the government agent should reasonably be aware that the information sought, while merely for basic identification purposes in the usual case, is directly relevant to the

_____

[2] In addition, to the extent Escobar is attempting to suppress the evidence found as a result of the search of the sedan, he has failed to show he has standing to challenge this search. See <u>United States v. Crippen, 627 F.3d 1056 (8th Cir. 2010)</u> (holding a vehicle passenger lacked standing to challenge the search of the vehicle).

substantive offense charged, will the questioning be subject to scrutiny." United States v. McLaughlin, 777 F.2d 388, 391-92 (8th Cir. 1985).

        *a.*      *Escobar's Statements*

Escobar argues there was nothing tying him to the drug transaction other than his identification made during the interview with Officers Pedersen and Visnaw. He therefore suggests his identification, including his name and address, was at issue and he was entitled to Miranda warnings before these questions were asked.

This argument ignores the fact that Investigator Berlie made a positive identification of the red pickup (and its association with Escobar) and was familiar with Escobar's appearance. Once the red pickup arrived at Wal-Mart, Berlie positively identified the truck and its driver, Escobar. The officers did not ask Escobar his identifying information as a means to confirm his identification, but as routine questions that do not require advance Miranda warnings.

        *b.*      *Morales' Statements*

Morales argues his statements regarding the documents found on his person at the time of his arrest should be suppressed. He states that responses to questions regarding the use of a false identification card or being an illegal alien, while not directly related to the elements of an illegal drug crime, can and often are used as circumstantial evidence at trial; that the government often argues that drug dealers use fake IDs.

Before any questioning occurred, Officers Visnaw and Pedersen were briefed on the case and knew Morales was being investigated for drug trafficking. Morales was not arrested for being an illegal alien, and the questions about his citizenship were not posed

or directly relevant to proving the elements of the drug crime under investigation. The officers asked questions about Morales' alien status, social security numbers, and the validity of the identification card he produced as part of GIPD's process to confirm the identity of the person charged. These routine booking questions did not violate Morales' Miranda rights.

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable Richard G. Kopf, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b), that the motions to suppress filed by the defendants, (Filing Nos. 49 & 51), be denied in their entirety.

The defendants are notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

IT IS ORDERED that the jury trial of this case is set to commence before Richard G. Kopf, Senior United States District Judge, in Courtroom 1, United States Courthouse, Lincoln, Nebraska, at 9:00 a.m. on April 4, 2016 or as soon thereafter as the case may be called, for a duration of four (4) trial days. Jury selection will be held at the commencement of trial.

Dated this 8th day of March, 2016

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge